THE STATE OF OHIO, APPELLANT, *v.* WILLIAMS, APPELLEE.

[Cite as *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699.]

*Criminal law—R.C. 2941.25—Merger of allied offenses—Standard of review—De novo.*

(No. 2011-0619—Submitted March 21, 2012—Decided December 6, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 94616, 2011-Ohio-0925.

_____

PFEIFER, J.

{¶ 1} The issue we address in this case is whether an appellate court should apply a de novo or an abuse-of-discretion standard when reviewing a trial court's determination of whether a defendant's offenses should merge pursuant to R.C. 2941.25. We hold that a reviewing court should review the trial court's R.C. 2941.25 determination de novo.

Factual and Procedural Background

{¶ 2} The alleged victim in this case, J.W., was the eight-year-old niece of defendant-appellee, Jason Williams. On June 22, 2009, Williams and his niece were among a group of people gathered at the home of the victim's grandmother. J.W. stayed outside to play with bubbles after the other children—her sister, brother, and two cousins—had gone inside the house. J.W. testified that she and the defendant went behind her grandmother's car so she could show him a bumper sticker. While they were behind her grandmother's car, Williams told J.W. to sit down on his lap; he pulled down the front of her skirt and her "unders" and put his mouth on her "private."

{¶ 3} She testified that Williams then took her by the hand and "took me between the two houses"—her grandmother's house and a neighbor's house, that

Williams was pulling her arm and she could not get away, and that she did not want to go between the houses with him. J.W. stated that when they got between the houses, Williams picked her up, put her on the ground and, while both were fully clothed, "put his private part on mine" and was "bouncing" on top of her. J.W. then heard her aunt Ja'Dean calling for her and told the defendant that she had to go. When the defendant got up, J.W. ran to her aunt, who was on the porch. She told her aunt, mother, and grandmother what had happened. Eventually, police officers and medical personnel interviewed her.

{¶ 4} Williams was indicted on six counts. Counts One and Two charged him with forcible rape of a child in violation of R.C. 2907.02(A)(1)(b), for the digital and oral penetration of the victim's vagina, respectively; Counts Three, Four, and Five charged him with gross sexual imposition under R.C. 2907.05(A)(4) for the acts of kissing the victim's neck, rubbing his penis on her, and placing his hand on her thigh and genital area. Count Six charged Williams with kidnapping, consisting of the unlawful restraint of J.W.'s liberty to facilitate the sexual assaults.

{¶ 5} The rape and the kidnapping charges included sexually-violent-predator specifications. The kidnapping charge also included a sexual-motivation specification. Williams elected to have the sexual-predator specifications tried to the court.

{¶ 6} The jury convicted Williams on all six counts. The trial court dismissed the sexual-motivation specification as "legally irrelevant" and found Williams not guilty of the sexual-predator specifications after a separate hearing.

{¶ 7} Prior to imposing sentence, the trial court considered whether Ohio's multiple-count statute, R.C. 2941.25, required a merger of offenses. The court found that neither the two rapes nor the three separate acts of gross sexual imposition merged. With regard to the kidnapping and rape charges, the trial court stated:

2

[C]learly the pressing of his body on top of this little girl so she can't move is a kidnapping, and that's clearly a merger situation. But I want to talk about the kidnapping in the sense that we heard evidence about it which was that he took her arm and pulled her along and got her behind the garage. I believe under the multiple count statute, this is separate conduct because, let's face it, had he done that and got her behind the garage and then she got away, we would still have a kidnapping.

And I think it's fair to say this falls into his conduct constituting two or more offenses of dissimilar import, as between the rapes and the kidnapping, and there is the fact that this conduct was committed separately. First he escorted and kidnapped her, and secondly, he raped her.

And he had a separate animus as to each kind of conduct, as between the rape and the kidnapping, there's a separate animus. So I don't think there is a merger there.

**{¶ 8}** The trial court sentenced Williams to 25 years to life in prison, consisting of 25 years for each rape count, five years for each sexual-imposition count, and ten years for the kidnapping count, all to run concurrently.

**{¶ 9}** Williams appealed to the Eighth District Court of Appeals. The court affirmed all the findings of guilt but reversed the trial court's judgment regarding the merger of the kidnapping and rape offenses. The appellate court held that the convictions for rape and kidnapping were allied offenses of similar import that should have merged at sentencing:

[A]ppellant maintains that the kidnaping conviction should have been merged as an allied offense. The State maintains that this also constituted a separate act with a distinct animus. However, we find the same conduct supports appellant's rape and kidnaping conviction. The indictment alleged that the kidnaping was sexually motivated and therefore appellant's animus for the kidnaping and rape was the same or, stated differently, the rape and kidnaping were a single act, committed with a single state of mind. Accordingly, the fourteenth assignment of error is sustained in part and this matter must be remanded to the trial court for further proceedings concerning the allied offenses.

*State v. Williams*, 8th Dist. No. 94616, 2011-Ohio-925, ¶ 61.

**{¶ 10}** The state appealed to this court, raising a single proposition of law: "A trial court's determination that offenses should not merge pursuant to R.C. 2941.25 should be affirmed absent an abuse of discretion."

**{¶ 11}** The cause is before this court upon the acceptance of a discretionary appeal. *State v. Williams*, 129 Ohio St.3d 1474, 2011-Ohio-4751, 953 N.E.2d 841.

Law and Analysis

**{¶ 12}** The state contends that an appellate court should affirm, absent an abuse of discretion, a trial court's determination of whether offenses should merge pursuant to R.C. 2941.25. The court below employed a de novo review of the trial court's determination. We conclude that a de novo review of an R.C. 2941.25 determination is appropriate.

R.C. 2941.25

**{¶ 13}** R.C. 2941.25 "codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10,

Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. At the heart of R.C. 2941.25 is the judicial doctrine of merger; merger is "the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime." *State v. Botta*, 27 Ohio St.2d 196, 201, 271 N.E.2d 776 (1971).

**{¶ 14}** The statute provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 15}** To ensure compliance with both R.C. 2941.25 and the Double Jeopardy Clause, "a trial court is required to merge allied offenses of similar import at sentencing. Thus, when the issue of allied offenses is before the court, the question is not whether a particular sentence is justified, but whether the defendant may be sentenced upon all the offenses." *Underwood* at ¶ 27.

From *Rance* to *Johnson*

**{¶ 16}** The method for courts to employ in determining whether two crimes constitute allied offenses of similar import has evolved; in the most recent

case to address the issue, *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, this court instituted an analysis more dependent on the conduct of the defendant than the analysis it had instructed courts to employ in earlier cases. It is largely because of this increased reliance upon the facts of particular cases that the state argues that appellate courts should employ an abuse-of-discretion standard in reviewing trial courts' R.C. 2941.25 determinations.

{¶ 17} This court established a two-part test for analyzing allied-offense issues in *State v. Blankenship*, 38 Ohio St.3d 116, 117, 526 N.E.2d 816 (1988):

> In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.

(Emphasis sic.)

{¶ 18} It is in regard to the first element of that test—the comparison of the elements of the two offenses—that there was confusion among courts about the role the facts of the particular case played in the analysis. This court set out to resolve that issue in *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999); the solution was an analysis that compared the statutory language of the two offenses in a vacuum to determine whether one necessarily included the elements of the other:

A problem inherent in the application of the test for similar/dissimilar import is whether the court should contrast the statutory elements in the abstract or consider the particular facts of the case. We think it useful to settle this issue for Ohio courts, and we believe that comparison of the statutory elements in the abstract is the more functional test, producing "clear legal lines capable of application in particular cases." *Kumho Tire Co., Ltd. v. Carmichael* (1999), 526 U.S. [137, 148], 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238, 250.

*Id.* at 636.

{¶ 19} Within a decade, this court realized that *Rance* had not resolved the uneven application of the allied-offenses test or the confusion surrounding it: "Despite trying to define a test 'capable of application in particular cases,' *Rance* has produced inconsistent, unreasonable, and, at times, absurd results." *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 20. In *Cabrales*, this court attempted to clarify *Rance* but clung to the abstract comparison of elements while attempting to institute a less-rigid test:

It is clear that interpreting *Rance* to require a strict textual comparison under R.C. 2941.25(A) conflicts with legislative intent and causes inconsistent and absurd results. Accordingly, we clarify that in determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), *Rance* requires courts to compare the elements of offenses in the abstract, i.e., without considering the evidence in the case, but does not require an exact alignment of elements.

*Id.* at ¶ 26-27.

{¶ 20} Two years later, in *Johnson*, this court abandoned the abstract analysis entirely, overruled *Rance*, and held, "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus. Thus, this court held that in making an allied-offenses determination, a court should not employ an abstract analysis, but instead should consider the statutory elements of each offense in the context of the defendant's conduct.

The Effect of *Johnson* on Appellate Review

{¶ 21} This renewed emphasis on the defendant's conduct in an R.C. 2941.25(A) analysis—whether offenses are allied offenses of similar import— does not make that analysis a pure question of fact requiring deference to the trial court. The consideration of a defendant's conduct in an R.C. 2941.25 analysis is nothing new—the defendant's specific conduct has always been a part of an R.C. 2941.25(B) determination as to whether the offenses were committed separately or committed with a separate animus. The second part of the *Blankenship* test requires a consideration of factors specific to an individual's conduct.

{¶ 22} In *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph five of the syllabus, this court held that "[a] rape conviction, pursuant to R.C. 2907.02(A)(1), and a kidnapping conviction, pursuant to R.C. 2905.01(A)(4), are allied offenses of similar import within the meaning of R.C. 2941.25(A), and cannot be punished multiply when they are neither committed separately nor with a separate animus as to each within the meaning of R.C. 2941.25(B)." Despite the state's urging that *Johnson* should change how appellate courts review trial courts' determinations, whether kidnapping and rape are allied offenses—the first part of the *Blankenship* test—was not part of the trial

court's analysis in this case. The trial court's decision in this case was based upon whether Williams's acts occurred separately or had a separate animus. That is, the trial court made its determination based upon the second *Blankenship* factor, while *Johnson* concerns the first *Blankenship* factor.

{¶ 23} This court's jurisprudence regarding the allied offenses of rape and kidnapping illustrates that a determination that addresses the specific conduct of the defendant does not give rise to an abuse-of-discretion standard for reviewing courts. In *State v. Logan,* 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), syllabus, this court established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B):

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

{¶ 24} In cases like *Logan*, *State v. Ware*, 63 Ohio St.2d 84, 406 N.E.2d 1112 (1980), and *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, this court applied the law set forth in *Logan* and *Price* to the facts of

individual cases to determine whether R.C. 2941.25 applied but never reviewed the trial court's decision using an abuse-of-discretion standard.

{¶ 25} Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions. That facts are involved in the analysis does not make the issue a question of fact deserving of deference to a trial court:

> [A] review of the evidence is more often than not vital to the resolution of a question of law. But the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact. Nor does that consideration involve the court in weighing the evidence or passing upon its credibility.

*O'Day v. Webb*, 29 Ohio St.2d 215, 219, 280 N.E.2d 896 (1972).

{¶ 26} As in cases involving review of motions to suppress, "the appellate court must * * * independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In cases like this, it is the jury making factual determinations, and the reviewing court owes deference to those determinations, but it owes no deference to the trial court's application of the law to those facts.

{¶ 27} Finally, de novo appellate review produces a more consistent jurisprudence. As the United States Supreme Court said of de novo review of probable-cause and reasonable-suspicion determinations in cases involving warrantless searches, a "sweeping deference" would lead to "varied results [that] would be inconsistent with the idea of a unitary system of law." *Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Moreover, "legal rules * * * acquire content only through application.

10

Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify, * * * legal principles." *Id*. This court's endeavor to provide clarity in the area of R.C. 2941.25 determinations is a continuing one.

## Conclusion

**{¶ 28}** An appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. The court below employed that standard. Since the state demands reversal based only upon its assertion that the court below should have applied an abuse-of-discretion standard of review, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

O'DONNELL, J., dissents.

_____

**O'DONNELL, J., dissenting.**

**{¶ 29}** In my view, the determination of whether two offenses are allied offenses of similar import is a mixed question of law and fact and is made by the trial judge at sentencing. Hence, the statement of the majority that "[i]n cases like this, it is the jury making factual determinations, and the reviewing court owes deference to those determinations, but it owes no deference to the trial court's application of the law to those facts," majority opinion at ¶ 26, confuses the work of a jury with that of the court.

**{¶ 30}** First of all, the jury is not involved in an allied-offense determination. The majority then compounds the error by leaping to the conclusion that "[a]n appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." Majority opinion at ¶ 28. However, because it is a mixed question of law and fact, an appellate court reviews the legal conclusion of whether the offenses are allied using a de

novo standard, but because the trial judge is the fact-finder, the trial court's determinations as to the facts are not reviewable de novo. In fact, the appellate court should defer to the factual findings of the trial court, provided they are supported by some competent, credible evidence. *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 31} Accordingly, I respectfully dissent.

_____

William D. Mason, Cuyahoga County Prosecuting Attorney, and Kristen Sobieski, Assistant Prosecuting Attorney, for appellant.

Jonathan N. Garver, for appellee.

_____