[Cite as *State v. Guevara*, 2023-Ohio-1448.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

          Plaintiff-Appellee,          :            No. 21AP-414
                                      (C.P.C. No. 19CR-1753)
v.                                               :
                                       (REGULAR CALENDAR)
William R. Guevara,                              :

          Defendant-Appellant.        :

---

D E C I S I O N

Rendered on May 2, 2023

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

**On brief:** *The Law Office of Eric J. Allen, Ltd.*, and *Eric J. Allen*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, William R. Guevara, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of aggravated robbery, robbery, and felonious assault. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed April 10, 2019, plaintiff-appellee, State of Ohio, charged Guevara with one count of aggravated robbery in violation of R.C. 2911.01, a first-degree felony; one count of robbery in violation of R.C. 2911.02, a second-degree felony; and one count of felonious assault in violation of R.C. 2903.11, a second-degree felony. Each of the charges contained an accompanying repeat violent offender specification pursuant to R.C.

2941.149(A).  The charges related to the beating and robbery of William Strucke on January 26, 2019.  Guevara entered a plea of not guilty.

{¶ 3}  At a jury trial beginning June 28, 2021, Strucke testified that during the early morning hours of January 26, 2019, he was sitting in his car parked outside his house to warm up because the heat in the house had been turned off.  While sitting in his vehicle, Strucke said a man came up to his car window holding up a shirt.  Strucke said he opened the window slightly to talk to the man, and the man asked if he wanted to buy a shirt for ten dollars.  After Strucke told the man no, Strucke said the man turned around and dropped one of the shirts on the street, so Strucke opened his car door, picked up the shirt, and alerted the man that he had dropped something.  Without warning, Strucke said the man struck him in the head with an object that had a long silver handle.  Strucke said the man repeatedly hit him while demanding money and threatening to kill him.  In an attempt to protect himself, Strucke said he covered his head with his hands, but the man kept beating him with the metal object.  Strucke sustained injuries to his head, arms, and hands, and he required 238 stitches, lost 4 teeth, and has ongoing issues with his arm and hands related to torn tendons and broken bones.

{¶ 4}  Eventually, Strucke said he fell to the ground during the attack.  While he was on the ground, Strucke testified the beating stopped and he was able to open his eyes in time to see the man get into Strucke's vehicle and drive away.  As the man was driving away, Strucke said the police showed up.

{¶ 5}  Strucke testified he worked for Kroger grocery store and, as part of his work uniform, he carries a trim knife, used to cull produce when he arranges it on store shelves, in the pocket of his apron.  Because he did not have a room of his own in the residence where he lived, Strucke said he kept all of his belongings in his car, including work items, and said he typically had three or four of the trim knives in his car.  Strucke testified he did not pull his knife out when he was attacked and he did not know how it ended up on the ground at the scene of the attack. He also testified he did not know the man who attacked him.

{¶ 6}  At some point after the attack, Strucke said police detectives showed him several photo lineups asking if he could identify the perpetrator.  Strucke testified he told

the detectives that one of the photographs looked "close" but he was not comfortable making an identification from the photographs. (June 29, 2021 Tr. Vol. I at 309.)

{¶ 7} Officer Kaitlyn Morales-Dyer, a police officer for the City of Columbus, testified she was dispatched to the scene of the incident on January 26, 2019 on reports of a burglary in progress. When she arrived at the scene, Officer Morales-Dyer said she encountered Strucke covered in blood and he told her he had been on his way to work when he was attacked and someone stole his car. At the scene, officers found a set of metal pliers, a trim knife, two tee-shirts, and blood in the snow. Both the pliers and the knife were covered in blood. Police found the stolen vehicle a short time later in the parking lot of a nursing home.

{¶ 8} As part of processing the scene, police requested DNA swabs of items at the scene and of the vehicle. Upon entering the DNA profile into the state system for felony offenders, the DNA was a match for Guevara. Detectives then asked Strucke to look at a photo array that included Guevara, and Strucke did not make an identification. Subsequently, Guevara consented to the taking of his DNA. Laboratory tests indicated Guevara's DNA matched the DNA found on the pliers, the tee-shirt, and inside the vehicle.

{¶ 9} Guevara testified in his own defense. According to his testimony, Guevara said he and Strucke knew each other and had had multiple conversations. On the morning of January 26, 2019, Guevara said Strucke was standing outside his car when Guevara asked Strucke if he wanted to buy a shirt. Guevara said Strucke was angry, smacked the shirts out of his hand, and started screaming at Guevara. At that point, Guevara said he bent down to pick up the shirts and Strucke said "I'll cut you" before cutting Guevara's coat with a knife. (June 29, 2021 Tr. Vol. III at 650.) Guevara said he was "scared to death" and described Strucke as acting "drunk" and "crazy." (June 29, 2021 Tr. Vol. III at 650.) Guevara testified that after Strucke cut his jacket, Guevara used the pliers in his pocket to "[keep] him at bay." (June 29, 2021 Tr. Vol. III at 651.) Guevara said he had to continue hitting Strucke in the head because Strucke "kept coming at me." (June 29. 2021 Tr. Vol. III at 651.)

{¶ 10} Guevara testified that when the fight moved to the curb, he dropped his pliers. When Strucke swung his fist at Guevara, Guevara said he was able to push Strucke to the ground and stomp on his hand so that Strucke would release the knife. Guevara said

he felt "overwhelmed" and felt like he could not breathe, and he was afraid his "lungs [were] shutting down" because he needed to use his inhaler. (June 29, 2021 Tr. Vol. III at 654.) He said he "knew he was dying" in that moment, so he got in Strucke's car and drove to his shed. (June 29, 2021 Tr. Vol. III at 654.) Guevara admitted to disabling the vehicle's battery so that police could not track the car by GPS. He also admitted taking Strucke's phone from the car and selling it to buy crack. The trial court instructed the jury on self-defense.

{¶ 11} Following deliberations, the jury found Guevara guilty of robbery, aggravated robbery, and felonious assault. The trial court conducted a sentencing hearing on July 30, 2021 and found the robbery conviction would merge with the aggravated robbery conviction for purposes of sentencing. However, the court did not agree with Guevara that the felonious assault conviction also should merge with the aggravated robbery conviction. The trial court ordered the sentence to be served consecutively to Guevara's conviction in another case and imposed an aggregate sentence of 25 years, journalizing Guevara's convictions and sentence in an August 2, 2021 judgment entry. Guevara timely appeals.

## II. Assignments of Error

{¶ 12} Appellant assigns the following two assignments of error for our review:

> [I.] The State of Ohio failed to produce sufficient evidence to convict him of all counts in the indictment.

> [II.] The trial court erred in failing to merge all three counts.

## III. First Assignment of Error – Sufficiency of the Evidence

{¶ 13} In his first assignment of error, Guevara argues there was insufficient evidence to support his convictions.

{¶ 14} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 15} The jury convicted Guevara of one count of aggravated robbery, one count of robbery, and one count of felonious assault. Pursuant to R.C. 2911.01(A), a person is guilty of aggravated robbery if the person, in attempting or committing a theft offense, as defined in R.C. 2913.01, or in fleeing immediately after the attempt or offense, either inflicted or attempted to inflict serious physical harm on another, or had a deadly weapon on or about the offender's person or under the offender's control and displayed the weapon, brandished it, indicated that the offender possessed it, or used it. R.C. 2911.01(A)(1) and (3). Pursuant to R.C. 2911.02(A)(2), a person is guilty of robbery if the person, in attempting or committing a theft offense, inflicts, attempts to inflict, or threatens to inflict physical harm to another. Lastly, to convict a person of felonious assault, the state must prove the person knowingly caused physical harm to another or caused, or attempted to cause, physical harm to another by means of a deadly weapon. R.C. 2903.11(A).

{¶ 16} Guevara's sole argument related to all three charges is that the state provided insufficient evidence of his identity as the perpetrator. More specifically, Guevara asserts the state's evidence related to identity was insufficient because Strucke, as the victim of the offense, was not able to definitively identify Guevara as the perpetrator. We note, however, that the state may establish the identity of a perpetrator by the use of direct or circumstantial evidence. *State v. Bias*, 10th Dist. No. 21AP-329, 2022-Ohio-4643, ¶ 36, citing *State v. Watkins*, 10th Dist. No. 14AP-807, 2016-Ohio-1029, ¶ 22, citing *State v. Mickens*, 10th Dist. No. 08AP-626, 2009-Ohio-1973, ¶ 18. "Circumstantial evidence is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.' " (Internal quotations and citation omitted.) *State v. Robinson*, 10th Dist. No. 17AP-5, 2018-Ohio-1809, ¶ 20, quoting *State v. Griesheimer*, 10th Dist. No. 05AP-1039, 2007-Ohio-837, ¶ 26. Circumstantial evidence has the same probative value as direct evidence. *Robinson* at ¶ 20, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990) (noting " 'circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt' ").

{¶ 17} The evidence at trial demonstrated that Guevara's DNA matched the profile of the DNA collected from the pliers and the tee-shirts recovered from the scene of the attack as well as the DNA collected from inside Strucke's vehicle. *See Mickens* at ¶ 21

(sufficient evidence to prove perpetrator's identity where, although victim did not identify the defendant either in a photo array or in court, DNA evidence collected from the victim on the date of the rape proved the defendant was with the victim that day). Additionally, in his attempt to argue he acted in self-defense, Guevara testified he was the person who got into an altercation with Strucke, hit him with pliers, drove away in Strucke's vehicle, and took Strucke's cell phone to sell for drugs. Thus, there was sufficient evidence to establish Guevara's identity as the perpetrator of all three charges. Accordingly, we overrule Guevara's first assignment of error.

## IV. Second Assignment of Error – Merger

{¶ 18} In his second and final assignment of error, Guevara argues the trial court erred when it failed to merge all three of his convictions for purposes of sentencing. In imposing Guevara's sentence, the trial court merged his convictions under Counts 1 and 2, aggravated robbery and robbery. On appeal, Guevara asserts the trial court additionally should have merged his conviction of felonious assault with the aggravated robbery conviction.

{¶ 19} In reviewing a trial court's determination of whether a defendant's offenses should merge for purposes of conviction, an appellate court reviews the trial court's determination de novo. *State v. Flood*, 10th Dist. No. 18AP-206, 2019-Ohio-2524, ¶ 25, citing *State v. S.S.*, 10th Dist. No. 13AP-1060, 2014-Ohio-5352, ¶ 28, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. " 'Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions. That facts are involved in the analysis does not make the issue a question of fact deserving of deference to a trial court.' " *S.S.* at ¶ 28, quoting *Williams* at ¶ 25.

{¶ 20} R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed

separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 21} Guevara argues the trial court erred when it failed to merge the offense of felonious assault with the offense of aggravated robbery for purposes of sentencing. "When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 24.

{¶ 22} "To determine whether two offenses are allied offenses that merge into a single conviction, a court must evaluate three separate factors: the conduct, the animus, and the import." *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 42, citing *Ruff* at paragraph one of the syllabus. "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus and motivation." *Ruff* at ¶ 25. Ultimately, if the harm resulting from each offense is separate and identifiable, the offenses are of dissimilar import and do not merge. *Harris* at ¶ 42, citing *Ruff* at ¶ 25.

{¶ 23} In conducting an analysis of whether two offenses are allied offenses of similar import, the Supreme Court of Ohio directs an appellate court to look beyond the statutory elements and to consider the defendant's conduct. "A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Ruff* at ¶ 25.

{¶ 24} Here, Guevara argues the state relied on the same conduct to support his convictions of aggravated robbery and felonious assault. He additionally asserts both offenses had the same resultant harm: the injuries to Strucke. The state responds that Guevara committed the offenses of aggravated robbery and felonious assault with separate animus and that each offense resulted in separate harm.

{¶ 25} Having reviewed the record, we agree with the state and the trial court that the offenses of aggravated robbery and felonious assault do not merge here. As the trial court noted, the offenses here were committed separately and each caused separate, identifiable harm. Strucke testified that his attacker repeatedly hit him in the head and arms with pliers, beating him severely until he fell to the ground. Once Strucke was on the ground and significantly injured, Guevara got into Strucke's vehicle and drove away. As the Supreme Court has recognized, merger is not required when the offenses "are not alike in their significance and their resulting harm." *Ruff* at ¶ 21. Based on these facts, the harm caused by Guevara's commission of the offense of felonious assault was the physical injury to Strucke, while the harm caused by Guevara's commission of the offense of aggravated robbery was the deprivation of Strucke's personal property. Therefore, the trial court did not err in refusing to merge Guevara's convictions of felonious assault and aggravated robbery. We overrule Guevara's second and final assignment of error.

## V. Disposition

{¶ 26} Based on the foregoing reasons, there was sufficient evidence to support Guevara's convictions of aggravated robbery, robbery, and felonious assault, and the trial court did not err in refusing to merge Guevara's felonious assault conviction with his aggravated robbery conviction. Having overruled Guevara's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

————————————